FILED
2026 Sep-25 AM 11:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**AMEENA LORAINE GORDON,**
Plaintiff,

**v.**

**FRANK BISIGNANO,
Commissioner of the Social Security Administration,**
Defendant.

**Case No. 5:25-cv-1306-CLM**

# MEMORANDUM OPINION

Ameena Loraine Gordon seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Gordon's application for benefits in an opinion written by an Administrative Law Judge ("ALJ").

Gordon argues that (1) the ALJ failed to properly evaluate the medical opinion evidence in the record; (2) the ALJ failed to properly evaluate Gordon's subjective pain testimony; and (3) the ALJ relied on a flawed hypothetical question to the vocational expert. The court agrees with Gordon that the ALJ erred in evaluating the State agency psychologists' opinion that Gordon's mental impairments would cause her to miss 1 to 2 days of work per month. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

## I. Statement of the Case

### A. Gordon's disability, as told to the ALJ

Gordon was 31 on her alleged disability onset date and 36 on her date last insured. (R. 4316, 4333). Gordon has a high school education and worked as a chemical operations specialist. (R. 94, 322).

According to Gordon's disability report, she cannot work because she suffers from post-traumatic stress disorder, depression, asthma, epicondylitis of the left elbow, reactive airway disease, allergic rhinitis, degenerative disc disease, cervical strain, and thoracic spine pain. (R. 321). Gordon has had two ALJ hearings: one on June 24, 2023, and one on December 12, 2024. During the June 2023 hearing, Gordon testified that she was in the military but left the army because she suffers from anxiety, agoraphobia, and severe anger issues. (R. 84). Gordon also said that she cannot work because she has trouble sitting and standing, can't pick up more than 10 to 15 pounds, and suffers from Lupus, insomnia, and headaches. (R. 87).

On a typical day, Gordon gets up around 5:15 AM and gets her son on the school bus by 6:00 or 6:15. (R. 91). If Gordon feels well (*i.e.*, doesn't have a Lupus rash or headache and doesn't need to go back to sleep), she will usually either go to her mother's house and have her take her to the grocery store or go to church to volunteer. (R. 91–92). But Gordon asserted that she doesn't believe she could hold down a full-time job because of the Alabama weather's effect on her asthma, her Lupus, her inability to function because of her anxiety, her issues with adapting to change, and her anger issues. (R. 93).

At the December 2024 ALJ hearing, Gordon confirmed that she was still living with her son who is in school. (R. 4348). Gordon also said that she has cut back on volunteering at her church but still volunteers there once a week. (*Id.*). Gordon then said that she had recently been to the hospital and was diagnosed with a tight chest cavity that mimicked a heart attack. (R. 4351). And Gordon asserted that she suffers from shortness of breath and migraine headaches. (R. 4352–53). According to Gordon, her depression comes and goes, and she usually experiences it around 2 to 3 times a week. (R. 4353–54). Gordon also says that she gets panic attacks 3 to 5 times a month. (R. 4354). And when Gordon is angry or upset, she can't focus on anything and has to walk out and not come back. (R. 4356).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied.<br>If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted.<br>If no, proceed to Step 4. |
| **Determine Residual Functional Capacity** | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied.<br>If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied.<br>If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Gordon's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Gordon applied for DIB and a period of disability in March 2021. Gordon's claim was initially denied in June 2022, so Gordon requested an ALJ hearing, which was held in June 2023. The next month, the ALJ issued a decision finding that Gordon was not disabled. The SSA's Appeals Council denied Gordon's request for review, so Gordon appealed the SSA's decision in federal district court. The Commissioner then filed an unopposed motion for sentence 4 remand, which the court granted. On remand, the Appeals Council directed the ALJ to hold a new hearing and issue a new decision.

The second ALJ hearing was held in December 2024, and in February 2025, the ALJ issued a new hearing decision again denying Gordon's application for benefits. (R. 4316–35). The ALJ's second hearing decision is the only decision at issue here.

At Step 1, the ALJ determined that Gordon was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Gordon suffered from the following severe impairments: restrictive airway disease, migraine headaches, obesity, anxiety, mood disorder/depression, and intermittent explosive disorder.

At Step 3, the ALJ found that none of Gordon's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Gordon's residual functional capacity.

The ALJ determined that Gordon had the residual functional capacity to perform a full range of light work with these added limitations:

- Gordon cannot climb ropes, ladders, or scaffolds.
- Gordon must avoid concentrated pulmonary irritants or non-weather related hot or cold temperature extremes and unprotected heights
- Gordon can understand, remember, follow, and perform simple routine instructions and tasks.
- Gordon is limited to jobs involving occasional and well-explained workplace changes.
- Gordon is limited to occasional interactions with co-workers and the public.
- Gordon can concentrate and remain on task for two hours at a time, sufficient to complete an eight-hour workday.

At Step 4, the ALJ found that Gordon could not perform her past relevant work.

At Step 5, the ALJ found that Gordon could perform jobs, such as sorter, inspector hand packager, and receiving weigher, that exist in significant numbers in the national economy and thus Gordon was not disabled under the Social Security Act.

Gordon requested an Appeals Council review of the ALJ's decision. The Appeals Council considered Gordon's reasons for disagreeing with the ALJ's decision but found no reason under the SSA's rules to assume jurisdiction. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Gordon makes three arguments. First, Gordon argues that the ALJ erred in evaluating the medical opinions in the record. Second, Gordon asserts that the ALJ failed to properly evaluate her subjective pain testimony. Finally, Gordon contends that the ALJ relied on a flawed hypothetical to the vocational expert by not accounting for Gordon's moderate limitations in concentration, persistence, or pace.

The court agrees with Gordon that the ALJ erred in not adequately explaining why she was not persuaded by the State agency psychological consultants' assertion that Gordon's mental impairments would likely cause her to miss 1 to 2 days of work per month. Thus, the court needn't address Gordon's other arguments for reversal.

Under the regulations that apply to Gordon's disability determination, an ALJ must articulate how persuasive she finds "all of the medical opinions and all of the prior administrative findings" in a claimant's case record. *See* 20 C.F.R. § 404.1520c(b). ALJs focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency and must explain how the ALJ considered those two factors. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how the ALJ considered other factors, such as the medical source's relationship with the claimant and specialization. *See id.* Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

1. *Background*: State agency psychologist Dr. Gloria Roque reviewed evidence of Gordon's mental impairments on initial consideration of Gordon's application for benefits. According to Dr. Roque, Gordon has sustained concentration and persistence limitations. (R. 112). For example, Dr. Roque found that Gordon has problems maintaining concentration and attention at times but should be able to maintain attention for 2-hours on simple tasks but not detailed or complex tasks. (*Id.*). Dr. Roque also said that Gordon would likely miss 1-2 days of work per month dealing with her mental health symptoms. (*Id.*). Dr. Roque based her opinions off her review of treatment records from Dr. Alan Piha at the VA and Gordon's reported daily living activities. (R. 106–09).

On reconsideration, Dr. Yamir Laboy also found that Gordon had sustained concentration and persistence limitations. (R. 125). According to Dr. Laboy, Gordon would likely have trouble carrying out more detailed tasks and instructions but would be expected to maintain attention and concentration for 2 hours with all customary rest breaks. (*Id.*). Dr. Laboy also said that a well-spaced work environment would be best for

maximum concentration. (*Id.*). And Dr. Laboy agreed with Dr. Roque that Gordon would likely miss 1-2 days of work per month due to her psychologically based symptoms. (*Id.*). Dr. Laboy then found that Gordon should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. (*Id.*). Like Dr. Roque, Dr. Laboy based her opinions on Dr. Piha's diagnoses and mental status exam findings as well as Gordon's reported daily activities. (R. 120–21).

The ALJ partially adopted the mental residual functional capacity assessments of Dr. Roque and Dr. Laboy "particularly with regard to [Gordon's] ability to handle simple tasks." (R. 4332). But the ALJ found that Dr. Roque and Dr. Laboy's assessments were "not fully persuasive, giving limitations far beyond that which are supported by the record (would likely miss one to two days a month)." (*Id.*). According to the ALJ, this finding had "no support in and [was] not consistent with the medical evidence of record." (*Id.*). In support of this finding, the ALJ pointed out that in April 2021 and December 2024 Gordon's treating physician Dr. Piha said that it was "unknown" how often Gordon would miss work because of her impairments. (*Id.*). And in April 2023, Dr. Piha made no finding that Gordon would miss work because of her impairments or treatment, stating only that Gordon had been unemployed since July 2016. (*Id.*). The ALJ also found that some of the State agency mental residual functional capacity language used was vague (including "well-spaced work environment" and "tactful" and "constructive" supervision). (*Id.*). So the ALJ determined that her residual functional capacity assessment was more specific and consistent with the evidence during the period at issue. (*Id.*).

2. *ALJ's error*: The court finds that the ALJ committed two errors in her analysis of the State agency psychologists' opinion that Gordon's mental health impairments would require her to miss 1 to 2 days of work per month. First, in addressing the consistency factor, the ALJ said that the finding that Gordon would miss 1-2 days of work per month contradicted Dr. Piha's April 2021 and December 2024 statements that it was "unknown" how often Gordon would miss work and failure to answer

questions related to how many days Gordon would miss work in April 2023. (R. 1802, 4304, 5114). But "no inference should be taken" from a treating physician's silence on a claimant's limitations. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Thus, that Dr. Piha did not express an opinion (or didn't know) about how many days of work per month Gordon would miss is not substantial evidence that supports a finding that the State agency psychologists' opinions were inconsistent with the other medical evidence in the record. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor" did not express an opinion on the matter.).

Nor does the ALJ's general statement that "[t]he finding that [Gordon] would likely miss one to two days per [month] has no support in and is not consistent with the medical evidence of record" supply substantial evidence to support the ALJ's consistency determination. (R. 4332). The only medical evidence of record that the ALJ specifically says the State agency psychologists' opinions contradict are the statements from Dr. Piha that he does not know how many days per month Gordon would miss work. Thus, this general statement fails to state with any "measure of clarity" whether there is any other medical evidence in the record that contradicts the State agency psychologists' finding that Gordon would miss 1 to 2 days of work per month. *See Dubose v. Comm'r of Soc. Sec.*, 2025 WL 2529598, at *5 (11th Cir. Sept. 3, 2025) (discussing what is required for an ALJ to show that she adequately considered and articulated the supportability and consistency factors). And it is not apparent to the court that other record evidence contradicts this finding.

Second, an ALJ errs when she addresses only an opinion's consistency with medical records from other providers and does not address whether the medical source's opinions are supported by the supporting explanations from the medical source giving the opinion. *See Ellenburg v. Bisignano*, 790 F. Supp. 3d 1327, 1333 (N.D. Ala. 2025). And here, the ALJ did not explain how she considered the supporting

explanations that the State agency psychologists gave for their findings or why those explanations did not support the finding that Gordon would miss 1 to 2 days of work per month. (*See* R. 108–10, 118, 120–21). Thus, the ALJ erred.

3. *Error not harmless*: The court also finds that the ALJ's error is not harmless. Because the ALJ did not point to valid reasons for rejecting the State agency psychologists' finding that Gordon would miss 1 to 2 days of work per month, the court cannot say whether substantial evidence supports the ALJ's decision to find this opinion unpersuasive. *See Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) (Re-weighing the evidence "would invade[ ] the province of the ALJ."). And a reasonable person persuaded by the finding that Gordon's symptoms would likely cause her to miss work for 1 to 2 days per month may have found Gordon disabled. To be certain, at the ALJ hearing, a vocational expert testified that if someone with Gordon's limitations exceeded "one day per month of absenteeism on a consistent basis, it would preclude all work in the national economy." (R. 4359). Thus, the court will remand this case for the ALJ to re-evaluate the State agency psychologists' opinion evidence.

—

In remanding this case for reconsideration of the State agency psychologists' findings, the court is not holding that the ALJ must find their opinions persuasive. Rather, the court is merely holding that substantial evidence did not support the ALJ's rationale for rejecting the finding that Gordon's mental impairments would likely cause her to miss 1 to 2 days of work per month. On remand, the ALJ must explain how she considered both the supportability and consistency factors when evaluating the State agency psychologists' opinions and may not rely on Dr. Piha's statements that he didn't know how many days of work Gordon would miss to reject the finding that Gordon would likely miss 1 to 2 days of work per month.

## IV. CONCLUSION

For these reasons, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess the opinions of the State agency psychologists.

The court will enter a separate final order that closes this case.

**Done** on September 25, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE